UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:19-cv-00188-BO

| | |
|---|---|
| IRENE BILLUPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | UNITED STATES' |
| v. ) | MEMORANDUM OF LAW IN |
| ) | SUPPORT OF ITS MOTION FOR |
| UNITED STATES OF AMERICA, ) | SUMMARY JUDGMENT |
| ) | |
| Defendant. ) | |

This is an action under the Federal Tort Claims Act, 28 U.S.C. §§ 2675, et seq. ("FTCA"), in which Plaintiff alleges she slipped and fell inside the United States Post Office on a rainy day in Henderson, North Carolina. Discovery has concluded, and now the United States moves for summary judgment.

Summary judgment should be granted for the United States because i) the United States did not owe a duty to warn Plaintiff of a possible hazardous condition of which Plaintiff had equal or greater knowledge, ii) Plaintiff fails to meet her burden to establish the United States breached a duty owed to her and iii) Plaintiff was contributorily negligent. Indeed, the undisputed evidence establishes that the United States kept the Post Office premises safe during that rainy day by inspecting it regularly, and visitors were warned of the potentially hazardous wet floor resulting from the rain by placement of a caution cone at the entrance. Additionally, there is no evidence the United States was aware of the allegedly wet floor where Plaintiff fell, or that the floor had been wet for such a time to give the United States

1

constructive knowledge of a dangerous condition. Finally, the undisputed evidence establishes Plaintiff failed to take reasonable steps to avoid injury despite the rainy conditions, and she was therefore contributorily negligent. Accordingly, the United States is entitled to summary judgment.

## STATEMENT OF FACTS

On January 29, 2018, Jacob Adams ("Adams") was the maintenance worker for the United States Postal Service ("USPS") at the postal facility located at 905 S. Garrett Street in Henderson, North Carolina. [Statement of Material Facts ("SMF"), ¶ 4]. As part of his duties and responsibilities, Adams had placed a caution cone just inside the Post Office entrance right behind the floor mat at the Post Office doors due to rainy conditions that day. [SMF, ¶¶ 8, 9]. During the course of the day, Adams repeatedly inspected the Post Office lobby for any hazardous condition that he needed to take care of pursuant to his responsibilities. [SMF, ¶¶ 9-11].

Around 3:00 p.m., Plaintiff entered the premises of the Post Office while attempting to take care of a postal transaction. (D.E. 1, ¶ 4; SMF, ¶ 12). At the time, the weather was overcast and raining. [SMF, ¶ 12]. Plaintiff entered the Post Office and walked to the right toward the area of the Post Office where she conducted her business. [SMF, ¶ 15]. When Plaintiff walked into the Post Office, Plaintiff was aware that the floor could be wet from the rainy conditions outside. [SMF, ¶ 14]. However, despite being aware that the floor may contain wet spots from foot traffic entering the Post Office on a rainy day, Plaintiff did not check the floor for wet spots. [SMF, ¶ 19]. According to Plaintiff, she slipped on the floor upon stepping off of the

2

floor mat at the interior entrance of the Post Office but she did not notice any wet spot on the floor and does not know what she slipped on. [SMF, ¶ 18, 19, 38, 39].

A second postal employee, Gwendolyn Speaksoneal ("Speaksoneal"), Supervisor Customer Service for the United States Postal Service, investigated the incident. [SMF, ¶¶ 23-33]. When Speaksoneal approached Plaintiff immediately following the alleged slip and fall, she saw the caution cone was in place as well as the mat inside the Post Office lobby door. [SMF, ¶ 22]. As part of the investigation, Speaksoneal took pictures of the lobby area and of Plaintiff's right leg. [SMF, ¶ 30]. Speaksoneal also obtained a signed statement from Plaintiff stating that a warning cone was in place on the interior of the Post Office lobby at the time of her alleged fall. [SMF, ¶¶ 26-32]. When Adams heard of the incident, he saw Speaksoneal taking pictures of Plaintiff, and he saw the mats at the lobby entrance were still in place as well as the 3-foot caution cone he had placed in the lobby entrance that morning at approximately 7:30 a.m. [SMF, ¶ 36]. Adams inspected the area where Plaintiff allegedly slipped and did not see any water spots or areas that required maintenance. [SMF, ¶ 37].

## STANDARD OF REVIEW

Summary judgment may be granted when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249

3

(1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. Scott v. Harris, 550 U.S. 372, 380 (2007). Thus, summary judgment is proper "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there [being] no genuine issue for trial." Matsushita, 475 U.S. at 587. See also Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted) ("[P]ermissible inferences must still be within the range of reasonable probability,. . .and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture."); Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005) (Judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture.")

## DISCUSSION

### I. APPLICABLE LAW.

A plaintiff may recover against the United States only to the extent that it has expressly waived sovereign immunity. Welch v. United States, 409 F.3d 646, 650 (4th Cir. 2005) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)). Congress waived the sovereign immunity of the United States for certain torts committed by federal employees when it enacted the FTCA. Kerns v. United States, 585 F.3d 187, 194 (4th Cir. 2009) (citing FDIC v. Meyer, 510 U.S. 471, 475 (1994)). However, the

4

FTCA is a limited waiver of immunity, imposing tort liability on the United States only "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and only to the extent that "a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred," id.; § 1346(b)(1). Thus, the substantive law of each state establishes the cause of action. Kerns, 585 F.3d at 194; Unus v. Kane, 565 F.3d 103, 117 (4th Cir. 2009). Here, that is North Carolina.

North Carolina law requires that "in order to prevail in a negligence action, [a plaintiff] must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages." Camalier v. Jeffries, 340 N.C. 699, 460 S.E.2d 133, 136 (1995). A premises owner's duty to its visitors is to use ordinary care to keep its premises in reasonably safe condition and to warn of hidden dangers or unsafe conditions of which the premises owner knows or should know. See Norwood v. Sherwin–Williams Co., 303 N.C. 462, 467 (1981), abrogated on other grounds by Nelson v. Freeland, 349 N.C. 615 (1998); Thompson v. Wal-Mart Stores, Inc., 138 N.C.App. 651, 653 (2000). The duty of a premises owner to keep its premises in a reasonably safe condition implies the duty of reasonable inspection from time to time. See Rogers v. City of Asheville, 14 N.C.App. 514, 517 (1972)(citation omitted). To show that a store owner breached its duty of care, a plaintiff must show that the store owner either negligently created the condition causing her injury or negligently failed to correct the condition after actual or constructive knowledge of its existence. See

5

Roumillat v. Simplistic Enterprises, Inc., 331 N.C. 57, 64 (1992); Thompson, 138 N.C.App. at 653-54.

## II. THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT DID NOT HAVE A DUTY TO WARN PLAINTIFF OF A POTENTIAL DANGER OF WHICH PLAINTIFF HAD EQUAL OR GREATER KNOWLEDGE.

Under North Carolina law, an owner of premises has no duty to warn an invitee of an obvious danger or condition of which the invitee has equal or superior knowledge. Byrd v. Arrowood, 118 N.C.App. 418, 421-22 (1995). As a matter of law, in situations involving rainy conditions, a plaintiff should be aware of the open and obvious danger that people would track water into a premises. James v. Wal-mart Stores, Inc., 354 N.C. 210 (2001), adopting the dissent from below at 141 N.C.App. 721, 724 (2001).[1]

Byrd is on point. In Byrd, the plaintiff slipped on the floor of a church after walking in from the rain. Byrd, 118 N.C.App. at 420. In holding that the church had no duty to warn the plaintiff of a potentially slippery condition, the North Carolina Court of Appeals relied on two things. First, the plaintiff admitted in her deposition that she knew it was raining. Id. Second, even if the floor was wet due to the rain that evening, that condition would have been an obvious danger of which plaintiff should have been aware since she knew it was raining outside and it was likely that

---

[1] In James, by reversing the Court of Appeals ruling, the Supreme Court of North Carolina in effect reaffirmed the holding in Byrd that, due to rainy conditions, a plaintiff should be aware of the open and obvious danger that people would track water into the premises; and, therefore, the defendant was not liable on a theory of negligence due to failure to warn. Bennett v. Merchandise Mart Properties, Inc., 2009 WL 1663983, at *4 (N.C.App. June 16, 2009).

6

people would track water in on their shoes. Id. These factors would only put the plaintiff on notice to be extra careful. Since the plaintiff and the church had equal knowledge of this obvious danger and since the plaintiff had not shown that the church had actual or constructive notice that this spot was wet, the church had no duty to warn the plaintiff of that potential peril. Id.

That is precisely the situation here. First, Plaintiff knew it was raining and had been earlier that day. [SMF, ¶ 12]. Second, Plaintiff does not know what she slipped on but assumed it was a wet spot resulting from the rainy conditions. [SMF, ¶¶ 38, 39]. As in Byrd, assuming the floor was wet due to the rain, Plaintiff admits that was an obvious danger of which Plaintiff was aware since she knew it was raining outside and it was likely that people would track water in on their shoes. [SMF, ¶ 14]. Therefore, as in Byrd, Plaintiff had equal knowledge of the potential slippery conditions in the Post Office lobby floor due to the rain. Since Plaintiff has not shown the Post Office had actual or constructive knowledge that the lobby floor was wet, discussed infra, the Post Office did not have a duty to warn Plaintiff of that potential peril. Accordingly, as in Byrd, summary judgment should be granted for Defendant.

### III. THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE UNDISPUTED EVIDENCE FAILS TO DEMONSTRATE THE UNITED STATES BREACHED ANY DUTY OWED TO PLAINTIFF.

In this case, the undisputed evidence establishes that the United States did not breach any duty owed to Plaintiff because it used ordinary care to keep its premises safe and it warned visitors of a potentially hazardous condition resulting

from the rain. Additionally, Plaintiff's speculation that there was a wet spot on the floor is not sufficient to meet her burden to show a breach of duty, and, even if there were a wet spot on the floor, Plaintiff fails to demonstrate the wet spot on the floor existed for any period of time to give the United States constructive knowledge of its existence. Thus, Plaintiff fails to demonstrate any breach of duty by the United States.

First, the undisputed evidence establishes that the United States kept is premises safe and conducted inspections of the premises on the day of Plaintiff's alleged fall. According to that evidence, Adams placed a 3-foot tall caution cone at the lobby entrance just off the floor mat inside the lobby door at the beginning of the day. [SMF, ¶ 9]. During the course of the day Adams repeatedly inspected the Post Office lobby for any hazardous condition that he needed to take care of pursuant to his responsibilities. [SMF, ¶¶ 10-11]. When any hazardous conditions were noted, and he rectified the issue. [SMF, ¶¶ 5, 6].

Second, the undisputed evidence establishes that the United States warned Post Office visitors of the potentially hazardous condition of a wet floor resulting from the rain by placing warning cones near the entrance. According to the evidence, Adams placed the caution cone warning of a potentially slippery hazardous condition in the Post Office lobby at approximately 7:30 a.m., and it was in place at the time of Plaintiff's fall. [SMF, ¶ 9]. The Post Office Supervisor on duty that day, Ms. Speaksoneal, saw the caution cone in place as well as the floor mat inside the Post Office lobby door immediately after Plaintiff fell. [SMF, ¶ 22]. Indeed, Plaintiff

8

Case 5:19-cv-00188-BO   Document 17   Filed 05/29/20   Page 8 of 17

herself even acknowledged the caution cone was in place when she entered the lobby prior to her fall. [Def. Appx. p. 3].

Thus, Plaintiff does not have any evidence that Defendant failed to conduct reasonable inspections or that the caution cone posted in the lobby at the entrance to the lobby from outside was somehow ineffective or inadequate. Accordingly, based on the repeated inspections and curative steps taken to rectify any potentially hazardous condition, as well as the clearly visible warning to visitors of the potentially hazardous condition, see [Def. Appx. pp. 4, 5], no reasonable juror would find that Defendant breached its duty of care on January 29, 2018, to conduct reasonable inspections and to warn visitors of potentially dangerous conditions. See Gaskill v. Great Atlantic & Pac. Tea Co., 6 N.C.App. 690, 695-96 (1969)(judgement for nonsuit in favor of the defendant was affirmed because the plaintiff had no evidence tending to show that defendant did or omitted to do anything which a premises of ordinary care and prudence would do under the same circumstances (rainy) for the protection of its customers or other invitees.).

Despite not seeing a wet condition or what she slipped on, Plaintiff speculates there was wet spot on the Post Office floor. [SMF, ¶ 39]. Plaintiff does not allege the Post Office created the dangerous condition. She also offers no evidence showing that any Post Office employee had actual knowledge of the wet spot in the lobby. Thus, she is left only her bald assertion that there was a wet spot on the floor for a period of time, and the Post Office should have known of it (i.e. that the Post Office had constructive knowledge of the wet condition). Plaintiff's claim fails here as well.

9

The plaintiff bears the burden of showing that a dangerous condition existed for such a period of time that the defendant through the exercise of reasonable care should have known of its existence. See Carter v. Food Lion, Inc., 127 N.C.App. 271, 275, disc. review denied, 347 N.C. 396 (1997). Constructive knowledge of a dangerous condition can be established in two ways: the plaintiff can present direct evidence of the duration of the dangerous condition, or the plaintiff can present circumstantial evidence from which the fact finder could infer that the dangerous condition existed for some time. See Nourse v. Food Lion, Inc., 127 N.C.App. 235, 241, aff'd, 347 N.C. 666 (1998). However, Plaintiff has no evidence of the purportedly wet floor or of its duration.

According to the undisputed evidence, Adams inspected the lobby a multitude of times that day prior to Plaintiff entering around 3:00 pm. [SMF, ¶ 10]. At 7:30 a.m., he had placed a caution cone to provide notice to the public of any potentially hazardous condition. [SMF, ¶ 9]. As admitted by Plaintiff, she does not know what she slipped on. [SMF, ¶ 38]. Plaintiff did not see a wet condition or any puddles and she did not see what she slipped on. [SMF, ¶ 39]. Instead, Plaintiff merely speculates there was a wet spot on the lobby floor. She could not say how long the alleged wet spot on the floor was present. [SMF, ¶ 43]. She also has no evidence for the period of time between Adams' last inspection and the time she slipped. Nor does she have any evidence that Adams' routine inspection of the lobby was too infrequent or that the 3-foot high clearly visible warning cone was ineffective or inadequate. Accordingly, Plaintiff fails to meet her burden in this case that the United States

10

negligently failed to correct the condition after actual or constructive knowledge of its existence.

Thompson v. Wal-Mart Stores, Inc., 138 N.C.App. 651, 653 (2000) is on point. In Thompson, the plaintiff slipped on a wet floor of Wal-Mart's premises. 138 N.C.App. at 652. Defendant was entitled to a directed verdict, however, because the plaintiff had no evidence that Wal-Mart i) created the wet spot, ii) had actual knowledge of the wet spot, or iii) had constructive notice of the wet spot. Thompson, 138 N.C.App. at 656. Specifically, the Court of Appeals held that the plaintiff had

> no direct evidence about how long the liquid was in the aisle. Rather, the plaintiff's evidence included the existence of the puddle and the pieces of glass hidden under the shelf. She also presented evidence showing that no one at Wal–Mart could say when the shampoo aisle had been cleaned last. However, to reach the conclusion that Wal–Mart should have known about the spill, a jury would have to make a number of inferences not based on established facts. For instance, a jury would have to infer that the spill came from a glass container; that the glass under the shelf came from a glass container as opposed to some other glass item; that the glass under the shelf came from the same glass container which held the liquid; that someone cleaned up some of the broken glass container and hid the rest under the shelf, but left the puddle on the ground free of broken glass. The jury would also have to speculate, without factual support, about how long the spill existed. To reach the conclusion that the liquid had been on the floor a long time, a jury would have to make too many inferences based on other inferences. We uphold the trial court's decision to find as a matter of law that Ms. Thompson's evidence cannot support the conclusion that Wal–Mart had constructive notice of the spill.

Thompson, 138 N.C.App. at 654-55.

Thompson is nearly identical to this case. Here, Plaintiff does not know what she slipped on and does not have any evidence concerning how long the alleged liquid was on the lobby floor. [SMF, ¶¶ 38, 39, 44]. Rather, Plaintiff's evidence consists of

11

sheer speculation of the existence of a wet spot in the Post Office lobby because she slipped, which is not enough to meet her burden. [SMF, ¶ 39]. Moreover, to reach the conclusion that Defendant should have known about the alleged wet spot in the lobby, a fact-finder would have to make a number of inferences not based on established facts. For instance, a fact-finder would have to infer that Plaintiff slipped on a wet spot on the floor as opposed to slipping due to her shoes being wet after walking in from the rain. Second, an inference would have to be made that the alleged wet spot on the Post Office lobby floor came from rainy conditions rather than another source, i.e. a customer spilling a drink. Third, a fact-finder would also have to speculate, without factual support, about the duration the alleged wet spot existed prior to Plaintiff allegedly slipping on it.

As in Thompson, to reach the conclusion that a wet spot had been on the floor for sufficient time to provide notice to employees of the Post Office of a hazardous condition, a fact-finder would have to make an inference upon an inference, upon an inference. Doing so though amounts to sheer speculation and nothing more. Thus, in this case, just as in Thompson, as a matter of law, Plaintiff's evidence cannot support the conclusion that Defendant had constructive notice of the allegedly wet floor. Since Plaintiff cannot establish the duration of the allegedly dangerous condition, or circumstantial evidence from which the fact finder could infer that the dangerous condition existed for some time, Defendant cannot establish the United States breached any duty owed to Plaintiff. See, e.g., Byrd, 118 N.C.App. at 422 (plaintiff failed "to prove that the church had actual or constructive notice that the

floor was slick" because "plaintiff admits that she was not looking at the floor at the time of her fall", "does not know what caused her to fall", and "has not shown how long the floor was slick or wet."). Accordingly, the United States is entitled to summary judgment.

### IV. THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE UNDISPUTED EVIDENCE ESTABLISHES PLAINTIFF WAS CONTRIBUTORILY NEGLIGENT IN HER FALL.

Contributory negligence arises from a breach of the plaintiff's duty to exercise ordinary care for his own safety. Clark v. Roberts, 263 N.C. 336, 343 (1965); Holderfield v. Rummage Bros. Trucking Co., 232 N.C. 623, 625 (1950). "Ordinary care" means that degree of care which "a reasonable and prudent person would exercise" under the same or similar circumstances. Martishius v. Carolco Studios, Inc., 355 N.C. 465, 473 (2002)(citing Hart v. Ivey, 332 N.C. 299 (1992)); see also Alford v. Washington, 244 N.C. 132, 140 (1956) ("Ordinarily the law imposes upon a person sui juris the obligation to use ordinary care for his own protection, and the degree of such care should be commensurate with the danger to be avoided." (citations omitted)). If the plaintiff's "failure to exercise due care for his own safety is one of the proximate contributing causes of his injury," his contributory negligence "will bar recovery." Holderfield, 232 N.C. at 625.

A plaintiff may be found negligent when he "ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety." Smith v. Fiber Controls Corp., 300 N.C. 669, 673 (1980) (citations omitted); see also Chaffin v. Brame, 233 N.C. 377, 380 (1951) ("[A] plaintiff

13

[cannot] be guilty of contributory negligence unless he acts or fails to act with knowledge and appreciation, either actual or constructive, of the danger of injury which his conduct involves." (citation omitted)). As the North Carolina Supreme Court has explained in more concise terms, "a person has a legal duty to avoid open and obvious dangers." Martishius, 355 N.C. at 479 (citing Gibbs v. Carolina Power & Light Co., 268 N.C. 186 (1966)). Accordingly, "a plaintiff may not recover in a negligence action where the hazard in question should have been obvious to a person using reasonable care under the circumstances." Dowless v. Kroger Co., 148 N.C.App. 168, 171 (2001). When contributory negligence is alleged in a slip-and-fall case, "[t]he question is not whether a reasonably prudent person would have seen the [hazard] had he or she looked but whether a person using ordinary care for his or her own safety under similar circumstances would have looked down at the floor." Norwood, 303 N.C.at 468.

There is no evidence that Plaintiff was distracted when she fell. The fall occurred around 3:00 p.m. and there is no evidence Plaintiff was preoccupied by conversation with anyone. Instead, the undisputed evidence establishes Plaintiff was aware of the rain that day and that the Post Office lobby floor may be wet. In fact, by her own admission, a wet, slippery floor was to be expected in the lobby of the Post Office when Plaintiff entered around 3:00 pm on January 29, 2018. [SMF, ¶ 14]. However, despite being aware of that potential hazard, Plaintiff did not exercise ordinary care for her own safety by even cursorily glancing down at the floor to ensure she could avoid wet spots on the floor or any other hazardous condition that could

14

exist as a result of the rain outside the lobby. [SMF, ¶ 19]. By her own admission, despite being aware of that potential hazard, Plaintiff simply walked in and "slipped." [SMF, ¶ 18].

Had Plaintiff been exercising reasonable care for her well-being under the circumstances, she would have inspected the lobby floor for hazardous wet spots as she walked in, and she could have taken steps to avoid the spot on which she allegedly slipped. Plaintiff did not take such reasonable steps despite the obvious hazard that could exist from rain and other foot traffic in and out of the lobby. Plaintiff was, therefore, contributorily negligent in her fall and Defendant is entitled to summary judgment. See, e.g., James v. Equity Residential Management, LLC, 2012 WL 5397184, at *2 (N.C.App. Nov. 6, 2012)(Summary judgment for the defendant was affirmed where the plaintiff was contributorily negligent in a slip and fall because she aware of the slippery condition and location, it was raining outside, and there was no evidence presented that the area was obstructed or hidden in any way, or that her attention was diverted by a condition on the premises.).

## CONCLUSION

For the foregoing reasons, the United States is entitled to summary judgment.

Respectfully submitted this 29h day of May, 2020.

>ROBERT J. HIGDON, JR.
>United States Attorney
>
>By: /s/ Rudy E. Renfer
>RUDY E. RENFER
>Assistant United States Attorney
>Civil Division
>150 Fayetteville Street
>Suite 2100
>Raleigh, NC  27601
>Telephone: (9l9) 856-4530
>Facsimile: (919) 856-4821
>Email: rudy.e.renfer@usdoj.gov
>N.C. Bar No. 23513
>Attorney for Defendant

CERTIFICATE OF SERVICE

I do hereby certify that I have this 29th day of May, 2020, served a copy of the foregoing upon the below-listed party or parties electronically using the CM/ECF system or by placing a copy of the same in the U.S. Mail, addressed as follows:

Elaine Beverly Wilson
Law Office of Elaine B. Wilson, P.L.L.C.
1013 Doe Lane
Clayton, NC 27527
919-333-2076
Fax: 703-783-8300
Email: ebwlaw1@earthlink.net

By: /s/ Rudy E. Renfer
RUDY E. RENFER
Assistant United States Attorney
Civil Division
3l0 New Bern Avenue
150 Fayetteville Street
Suite 2100
Raleigh, NC 27601
Telephone: (9l9) 856-4530
Facsimile: (919) 856-4821
Email: rudy.e.renfer@usdoj.gov
N.C. Bar No. 23513
Attorney for Defendant